# UNITED STATES DISTRICT COURT
for the

Southern District of Indiana

| United States of America | ) | **SEALED** |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 1:20-mj-1001 |
| STEPHEN KING, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of April 12, 2020 - September 2, 2020 in the county of Marion in the Southern District of Indiana, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 18 U.S.C. § 922(a)(1)(a) | Dealing Firearms without a Federal Firearms License |
| Count 2: 18 U.S.C. § 922(a)(6) | False Statement in Connection with the Acquisition of a Firearm |
| Count 3: 18 U.S.C. § 924(a)(1)(a) | False Statement with Respect to Information Required to be Kept by a Licensed Firearms Dealer |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

s/ Brian Clancy
*Complainant's signature*

Brian Clancy, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by telephone *(reliable electronic means)*

Date: 11/17/2020

City and state: Indianapolis, IN

Paul R. Cherry
United States Magistrate Judge
Southern District of Indiana

## AFFIDAVIT IN SUPPORT OF APPLICATION        SEALED

I, Brian Clancy, being duly sworn under oath, states as follows:

1. I am a Special Agent (SA) with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since November 2015. In connection with official ATF duties, I investigate criminal violations of federal laws, including, but not limited to, firearms offenses such as violations of Title 18, United States Code, Sections 922(g) and 924(c). I have testified in judicial proceedings and prosecutions for violations of firearms laws. I have also been involved in various types of surveillance and in the debriefing of defendants, witnesses, informants, and others who have knowledge of the use of firearms in conjunction with other criminal activities, including armed robberies and the distribution of controlled substances.

2. Prior to joining the ATF, I was employed with the Joliet Police Department (JPD) in Joliet, Illinois for five months as a patrol officer and was assigned to the Neighborhood Oriented Police Team. Prior to working with JPD, I was employed by the Department of Homeland Security as a Federal Air Marshal for over five years.

3. This affidavit is submitted in support of a criminal complaint charging Stephen KING (hereinafter KING) with committing the crimes of Dealing Firearms without a Federal Firearms License, in violation of Title 18, United States Code, Section 922(a)(1)(a), False Statement in Connection with the Acquisition of a Firearm, in violation of Title 18, United States Code, Section 922(a)(6);, and False Statement with Respect to Information Required to be Kept by a Licensed Firearms Dealer in violation of Title 18, United States Code, Section 924(a)(1)(a).

4. The information set forth in this Affidavit is based upon my participation in this investigation, interviews of witnesses, review of law enforcement reports, discussions with other law enforcement officers involved in the investigation, and my experience and training. This

Affidavit does not set forth each and every fact your Affiant has learned during this investigation, but rather is provided solely for the purpose of establishing probable cause in support of the criminal complaint in this matter. The information contained in the following paragraphs is either personally known to your Affiant or was told to your Affiant by other law enforcement officers.

## FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

5. In August of 2020, ATF Chicago contacted ATF Indianapolis regarding firearms that the ATF and the Chicago Police Department had recovered in connection with crimes committed in Chicago, Illinois. Records indicated that the firearms had been purchased by an individual named Stephen KING in Indianapolis approximately four days prior to being recovered by law enforcement in Chicago. Stephen KING is a resident of Indianapolis. KING is not a Federal Firearm Licensee (FFL) and is therefore prohibited from engaging in the business of selling firearms and ammunition.

6. On September 3, 2020, members of ATF Group III conducted surveillance on KING and observed KING drive from his residence in Indianapolis to Beech Grove Firearms located at 3020 South Emerson Avenue, Beech Grove, Indiana. Beech Grove Firearms is an FFL which is licensed to be engaged in business pertaining to sales of firearms and ammunition.

7. KING entered Beech Grove Firearms at approximately 10:35 A.M. Special Agent Brian Reardon followed KING into the store and surveilled KING in an undercover capacity. SA Reardon was close enough to KING in the business to hear KING make multiple statements. SA Reardon heard KING make a statement to the effect of, "People used to want specific guns, but now people just want a gun." SA Reardon also heard KING say something to the effect of, "You got to love this business," and "You do not have to do anything, the products sell themselves." KING purchased two Glock semiautomatic handguns and drove home.

8. FFLs generate multiple sales reports when a purchaser buys two or more firearms within a five (5) day period. On September 3, 2020, your affiant reviewed multiple sales reports related to KING. The reports indicated that KING had purchased approximately twenty-three (23) firearms from FFLs on eight different occasions between April 22, 2020 and September 3, 2020. Records further revealed that KING had purchased multiple firearms which were later recovered by law enforcement.

9. Your affiant obtained a state search warrant for KING's residence at 5078 Emmert Drive, Indianapolis, IN. On September 4, 2020, ATF Special Agents, Task Force Officers, and Indianapolis Metropolitan Police Department (IMPD) officers executed said search warrant.

10. SA Dave Lopez, SA Thomas Spratte, and your affiant interviewed KING in his home at the time of the search. Investigators read KING his rights via ATF's Advice of Rights and Waiver form and informed KING that he was not under arrest. KING signed and initialed the form indicating he understood his rights. Investigators told KING they knew he had recently purchased multiple firearms from FFLs, and they asked KING where those firearms were. KING stated they were gone. Your affiant asked if KING had sold those firearms. KING confirmed that he had already sold any firearm not found in the house.

11. KING further stated during the interview that he kept bills of sales from his firearm transactions and documented any sale he made on his email account, cujo71321@yahoo.com. KING stated he would send an email to himself when he purchased a firearm and reply to the same email when selling the firearm. KING stated he currently had active postings of firearms for sale on Armslist.com. Armslist.com is a free online marketplace that provides a platform for private firearms sales.

12. Pursuant to the search warrant, investigators seized three Glock 43x semiautomatic pistols, one Walther pistol, and various records that KING kept of his firearms purchases and sales.

13. Investigators then obtained a state search warrant for KING's email account. Data from KING's email account corroborated KING's statements from his interview. KING would send an email to himself when he acquired a firearm. The email would include the date, purchase price, firearm information such as the make, model, and the serial number, and who he had purchased the firearm from. Once KING resold a firearm, KING would find that email for that specific firearm and reply to it, again to himself, and document the date, sale price, firearms information, and the name of the person involved in the sale. His email account served the same purpose as an FFL acquisition and disposition book (A&D Book), which FFLs are required to keep in order to document the incoming and outgoing of all firearms.

14. KING's email account revealed KING had purchased and then re-sold approximately one hundred and sixty-seven (167) firearms between April 12, 2020 and September 2, 2020. Of those 167 firearms, KING purchased thirty-eight (38) from FFLs. KING purchased the remaining one hundred and twenty-nine (129) firearms online from private sellers using third party websites such as Armslist.com and Facebook.com.

15. For every firearms purchase made from an FFL, buyers are required to fill out ATF form 4473. Question 11(a) on said form reads as follows: Are you the actual transferee/ buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/ buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/ buyer, the licensee cannot transfer the firearm(s) to you.**

16. On August 14, 2020, KING purchased a Glock Model 19 semiautomatic handgun, serial number BPGZ661, from Plainfield Shooting Supply FFL for $523.23. According to his records, KING sold said Glock Model 19 to an individual named Lamar McNary on the same day for $650.

17. On August 27, 2020, KING purchased two Glock Model 17 semiautomatic handguns - one from Bradis Guns FFL for $533.93, and one from Beech Grove Firearms FFL for $523.23. According to his records, KING then sold both of those firearms to Lamar McNary on the same day for $650 each.

18. On August 28, 2020, KING purchased a Glock 26 Gen4 9mm semiautomatic handgun, serial number ZRF142, from Beech Grove Firearms. According to KING's email records, KING then sold that Glock 26, serial number ZRF142, the same day to an individual named Donovan Ferguson for $650. KING possessed this firearm for less than 24 hours and made approximately $116 in profit.

19. KING filled out the required ATF form 4473 when making each of the above-mentioned purchases from FFLs described in paragraphs 16-18, and he answered "yes" to question 11(a), indicating he was the actual transferee/buyer and was not purchasing the firearm on behalf of another person. KING signed the 4473 forms and certified all his answers were true.

20. The investigation also revealed that KING sold approximately twenty-five firearms on eight separate occasions to an individual who KING believed to be named David Saldana. David Saldana's real name is Benjamin Cortez-Gomez, and he is a convicted felon who resides in Chicago.

21.     For example, on or about June 5, 2020, KING purchased four firearms from Rural King FFL - a Taurus Model 856 revolver, serial number ABD451473; a Taurus Model 856 Ultralite revolver, serial number MW14959; and two Springfield Armory Model XDM semiautomatic handguns, serial numbers AT218203 and AT218260. KING filled out an ATF 4473 form indicating that he was the actual transferee/buyer of those firearms, and that he was not purchasing them on behalf of another person. On June 7, 2020, KING sold those four firearms, as well as two additional firearms, a Sig Model P320 semiautomatic handgun and a DTI model AR 15 semiautomatic rifle, to Benjamin Cortez-Gomez. This transaction netted KING a profit of $523.94 according to KING's records.

22.     Text messages from Cortez-Gomez's cell phone showed communication with KING indicative of firearms dealing. KING stated in one message "I will try to find another G3C, I am limited to what crosses my path," indicating that KING would attempt to purchase a specific type of firearm for Cortez-Gomez. KING also texted Cortez-Gomez on multiple occasions about how KING had "just" gotten a firearm and KING wanted to see if Cortez-Gomez was interested in purchasing it. Of the twenty-five (25) firearms KING sold to Benjamin Cortez-Gomez, six (6) have been recovered by law enforcement in connection with weapons violations.

23.     Of the 167 firearms that KING is known to have purchased and re-sold between April 12, 2020 and September 2, 2020, KING re-sold approximately 100 of those firearms within three days or less from when he purchased them.

24.     KING's records also showed that he purchased and re-sold the same type of gun multiple times. For example, KING purchased and re-sold approximately seventeen (17) Glock model 19 firearms, nine (9) Glock model 43x firearms, fifteen (15) S&W M&Ps, and eight (8) Bersa Thunder firearms between April 12, 2020 and September 2, 2020.

25. KING documented an overall profit of approximately $9,935.14 from his firearms sales between April 12, 2020 and September 2, 2020.

26. Your affiant knows through his training and experience that the large number of firearms bought and sold, the short time between the purchase and resale, the return on investment, the repeated purchasing of the same type of firearms, and the record keeping in this case are all indicative of active engagement in the business of dealing firearms without the required federal firearms license and of making false statements to FFLs in connection with the acquisition of firearms.

## CONCLUSION

27.   Based upon the above stated facts and attending circumstances, there is probable cause to believe Stephen KING committed the crimes of Dealing Firearms without a Federal Firearms License, in violation of Title 18, United States Code, Section 922(a)(1)(a), False Statement in Connection with the Acquisition of a Firearm, in violation of Title 18, United States Code, Section 922(a)(6); and False Statement with Respect to Information Required to be Kept by a Licensed Firearms Dealer, in violation of Title 18, United States Code, Section 924(a)(1)(a). I respectfully request this Court issue a Criminal Complaint charging KING accordingly, along with a summons for KING to appear.

s/Brian Clancy<br>
Brian Clancy, Special Agent<br>
Bureau of Alcohol, Tobacco,<br>
Firearms, and Explosives

Subscribed and sworn before me by reliable electronic means.

Dated: 11/17/2020

Paul R. Cherry
United States Magistrate Judge
Southern District of Indiana