UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CAUSE NO.1:21-CR-00017-JMS-MJD |
| | ) | |
| STEPHEN KING | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by counsel, Zachary A. Myers, United States Attorney for the Southern District of Indiana, and Kelsey L. Massa, Assistant United States Attorney, hereby submits this Sentencing Memorandum in advance of the hearing presently scheduled for March 15, 2022. It is the United States' understanding that the Defendant will be seeking a sentence that does not include any incarceration. For the reasons stated in this Memorandum, the United States respectfully requests that the Court sentence the Defendant to a term of incarceration at the low end of the advisory Guidelines range.

*I.    Procedural Posture*

On November 17, 2020, Stephen King ("the Defendant") was charged by Criminal Complaint with one count of dealing in firearms without a federal firearms license, in violation of Title 18 U.S.C. § 922(a)(1)(A), one count of making false statements in connection with the acquisition of a firearm, in violation of Title

1

18 U.S.C. § 922(a)(6), and one count of making false statements with respect to information required to be kept by a licensed firearms dealer, in violation of Title 18 U.S.C. § 924(a)(1)(A).

On January 22, 2021, a federal grand jury in the Southern District of Indiana returned an 11-count indictment, charging the Defendant with one count of dealing in firearms without a federal firearms license, in violation of Title 18 U.S.C. § 922(a)(1)(A), five counts of making false statements in connection with the acquisition of a firearm, in violation of Title 18 U.S.C. § 922(a)(6), and five counts of making false statements with respect to information required to be kept by a licensed firearms dealer, in violation of Title 18 U.S.C. § 924(a)(1)(A).

On November 15, 2021, a Petition to Enter a Plea Agreement and Plea Agreement was filed, wherein the Defendant has agreed to plead guilty to Count 1 of the Indictment, Unlicensed Dealing in Firearms. At the time of sentencing, the United States has agreed to dismiss the remaining counts in the Indictment.

## II. The Defendant's Criminal Conduct

In support of its sentencing position, the United States refers the Court to the factual summary included in the Presentence Investigation Report (hereinafter "PSR"), the factual basis contained in the plea agreement, and the additional facts outlined below.

This investigation revealed that the Defendant purchased for resale approximately one hundred sixty-seven (167) firearms between April 12, 2020, and September 2, 2020. Of those known 167 firearms, KING purchased thirty-eight (38)

from FFLs. The remaining one hundred twenty-nine (129) were acquired using websites including, but not limited to, Armslist.com and Facebook.com.

For each purchase made from an FFL, the Defendant filled out an ATF Form 4473. One of the questions on the form reads as follows: *Are you the actual transferee/ buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/ buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/ buyer, the licensee cannot transfer the firearm(s) to you*. The Defendant answered "yes" to this question for each of the transactions.

But this answer was false. Like the firearms he purchased online, the Defendant intended to resell those firearms that he purchased from FFLs as soon as possible. Of the approximately 167 firearms that the Defendant purchased, the Defendant possessed 122 for less than one week (7 days) before selling the firearms to other individuals. The Defendant sold 101 firearms in three (3) days or less from the time he purchased them.

On multiple occasions, the Defendant purchased firearms from FFLs and resold them on the same day. Some examples include the following:

    a. On May 25, 2020, the Defendant purchased a Glock Model 17 bearing serial number AEGG818 from Bradis FFL for $533.00. He sold said firearm on the same day for $700, for a profit of $167.00.

    b. On August 14, 2020, the Defendant purchased a Glock Model 19 bearing serial number BPGZ661 from Plainfield Shooting Supply FFL for

3

    $523.23. He sold said firearm on the same day for $650, for a profit of $126.77.

  c. On August 27, 2020, the Defendant purchased a Glock Model 17 bearing serial number ADBD995 from Bradis FFL for $533.93. He sold said firearm on the same day for $650, for a profit of $116.77.

  d. On August 27, 2020, the Defendant purchased a Glock Model 17 bearing serial number ADBD995 from Beech Grove Firearms FFL for $523.23. He sold said firearm on the same day for $650 at a profit of $126.77.

According to the Defendant's own records, he made an overall profit of approximately $9,935.14 from engaging in the business of dealing firearms without a license.

### III. *Gun Sales, Time-to-Crime, and the Nationwide Increase in Gun Violence*

It is vitally important to place the Defendant's criminal conduct, which occurred from April of 2020 until September of 2020, in context. The dominant public safety challenge in the United States over much of the past decade has been violent gun crime, and the turmoil of the year 2020 exacerbated this already intransigent problem.[1] According to the CDC, 45,222 people died from gun-related injuries nationwide in 2020. This is the highest total ever reported, representing a 14% increase from the year before and a 25% increase from five years earlier. 54%

---

[1] The statistics cited in this memorandum come from the Federal Bureau of Investigation's Uniform Crime Report (available at, https://crime-data-explorer.app.cloud.gov/pages/home); the Centers for Disease Control and Prevention National Center for Health Statistics (available at https://www.cdc.gov/nchs/fastats/injury.htm), the Gun Violence Archive (gunviolencearchive.org), ATF Firearms Trace Data (available at https://www.atf.gov/resource-center/data-statistics) and other sources cited within this memorandum.

of those gun-related deaths were suicides (24,292), 42% were murders (19,384), and the remaining 3% were unintentional, involved law enforcement, or had undetermined circumstances.

Nearly eight-in-ten (79%) U.S. murders committed in 2020 involved a firearm. That marked the highest percentage since at least 1968, the earliest year for which the CDC has online records. Nonfatal shooting numbers are harder to nail down, because many police records management systems do not typically include a specific focus on nonfatal shootings. *See generally* David S. Bernstein, *Americans Don't Really Understand Gun Violence*, THE ATLANTIC (Dec. 14, 2017) (https://www.theatlantic.com/politics/archive/2017/12/guns-nonfatal-shooting-newtown-las-vegas/548372/). But nonfatal shootings did increase in many cities throughout the country in 2020. In Indianapolis in 2020, a total of 614 people were shot and survived in 2020, compared to 523 the year before and 492 in 2018. Lawrence Andrea and Sarah Nelson, *Indianapolis' Killing Keep Climbing: There is No Code Anymore*, INDIANAPOLIS STAR (Nov. 23, 2021) (https://www.indystar.com/story/news/crime/2021/11/23/indianapolis-crime-killings-homicide-shootings-city-facing-another-year-records/6133287001/).

The turmoil and violence of 2020 coincided with a massive increase in firearm purchases. Americans purchased approximately 23 million guns in 2020 – a 65% increase from 2019. If all of those guns were purchased by responsible, law-abiding gun owners, this would not be cause for concern. However, the data show that law enforcement recovered almost twice as many guns with a short "time-to-crime" as

they did in 2019. "Time-to-crime" measures the time between when a firearm is purchased from an FFL to when it was recovered in a crime. Police recovered more than 87,000 guns in 2020 with a time-to-crime of less than one year, double the previous high. The number of traced guns whose time-to-crime was six months or less increased by 90 percent in 2020, compared to 2019. Only about 13 percent of guns traced from 2015 to 2019 were recovered within six months of purchase. In 2020, 23 percent were.

Though researchers disagree about how to interpret this data, it clearly shows that guns used in crime in 2020 were newer than in the past. The Defendant's conduct in this case bears out this data trend.

### IV. Application of 18 U.S.C. § 3553(a) Factors

A sentence at the low end of the guidelines fairly reflects the factors to be considered under § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and afford adequate deterrence to criminal conduct, the need to protect the public from future crimes of the Defendant, and the need to avoid unwarranted sentencing disparities.

The nature and circumstances of this offense are serious. The Defendant, in the midst of civil unrest and Covid-19 lockdowns, saw an opportunity to make money from dealing firearms. Despite having previously held a federal firearms license, and knowing the requirements, the Defendant chose not to obtain one. Such a license would have required him to perform background checks on individuals to

whom he sold firearms. Instead, the Defendant found customers online, and had no way to verify their identity. Indeed, at least one of the Defendant's repeat customers used a false name to buy guns from the Defendant. The customer was actually a convicted felon who was transporting guns to Chicago. The Defendant also repeatedly lied on 4473 forms when purchasing firearms from FFLs.

Of the 38 guns the Defendant purchased from FFLs, 10 have been recovered by law enforcement and traced to the Defendant. The shortest time-to-crime was four days. Of the guns recovered in 2020, the longest time-to-crime was four months. The circumstances of the recoveries range from traffic stops to investigations involving drug trafficking and firearms trafficking. The rest of the Defendant's firearms purchases were made online from Armslist.com or Facebook, meaning that any law enforcement trace will not return to the Defendant, but to the original purchaser. The scope of the damage the Defendant's unlicensed firearms dealing has caused therefore remains ongoing.

The Defendant also made statements to the effect of "People used to want specific guns, but now people just want a gun," and "You've got to love this business, the products sell themselves" when purchasing firearms from an FFL in September of 2020. This shows he was fully aware of the uptick in gun purchases that occurred in 2020. He took full advantage of that increased demand.

The root causes of gun violence, both in Indianapolis and nationwide, are complex and varied. But the diversion of guns from legal commerce to illegal commerce only helps fuel that violence. *See* Section III, *supra.* Finally, it bears

noting that the effects of gun violence are felt unequally. Shootings are historically concentrated in impoverished, minority communities. Most homicide victims are Black, and Black Americans were eight times as likely to be murder victims in 2020 as white Americans. German Lopez, *Examining the Spike in Murders*, N.Y. TIMES (Jan. 18, 2022) (https://www.nytimes.com/2022/01/18/briefing/crime-surge-homicides-us.html).

The Defendant's conduct introduced over 150 guns into the underground gun economy. This warrants a sentence within the advisory Sentencing Guidelines, in order to deter other offenders, reflect the seriousness of the offense, provide just punishment, and promote respect for the law.

<br>

|  | Respectfully submitted, |
|---|---|
|  | ZACHARY A. MYERS<br>UNITED STATES ATTORNEY |
| By: | /s/ *Kelsey L. Massa*<br>Kelsey L. Massa<br>Assistant United States Attorney |

**CERTIFICATE OF SERVICE**

I hereby certify that on **March 8, 2022,** the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

          By:   /s/*Kelsey L. Massa*
                  Kelsey L. Massa
                  Assistant United States Attorney
                  Kelsey.massa@usdoj.gov